# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RICARDO GABINO,
        Plaintiff,

    v.                                              Case No. 05C417

DR. BOHLMAN and
ELIZABETH PETERS,
        Defendants.

## DECISION AND ORDER

Plaintiff Ricardo Gabino, a Wisconsin prisoner currently incarcerated at the Kettle Moraine Correctional Institution, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis. Before me are defendants Brian J. Bohlman's and Elizabeth Peters's motions for summary judgment. Plaintiff has also filed a motion for summary judgment as to his claim against Peters[1] and several additional motions.

## I. BACKGROUND

Plaintiff's complaint states that between December 2003 and February 2004, while detained at the Walworth County Jail, defendants negligently treated plaintiff for various medical problems. It further states that in September 2004, defendant Peters refused to give him medical treatment of any kind because plaintiff lacked funds to pay for it. On June 6, 2005, I screened the complaint pursuant to 28 U.S.C. § 1915A and permitted plaintiff to proceed only on his claim that he was denied medical care because he lacked adequate

---

[1]Plaintiff's motion for summary judgment does not state that it is limited to his claim against Peters, but it only refers to his claim against Peters and does not implicate Bohlman.

funds to pay for it. Peters's motion for summary judgment and plaintiff's response to such motion include proposed facts and analysis pertaining to the claim that I dismissed in the June 2005 order. However, consistent with that order, I will only discuss facts and analyze the law with respect to plaintiff's claim that he was denied medical treatment because he did not have sufficient funds to pay for it.

During 2003-2004, plaintiff was incarcerated for various periods at Walworth County Jail (WCJ) and the Dodge Correctional Institution (DCI). Between August 24, 2003 and September 23, 2004, plaintiff was incarcerated as follows:

```
8/24/03    to    2/19/04    WCJ
2/19/04    to    4/23/04    DCI
4/23/04    to    5/5/04     WCJ
5/5/04     to    8/31/04    DCI
8/31/04    to    9/23/04    WCJ
```

(Peters's Ex. A at 18-20.) On September 23, 2004, plaintiff was again transferred to DCI.

When plaintiff was transferred back to WCJ from DCI on August 31, 2004, he was taking two medications, Trilisate and Amitriptyline. Trilisate is a non-steroidal, anti-inflammatory drug used for pain relief and Amitriptyline is an anti-depressant. Plaintiff claims that in September 2004, Peters came by his cell and plaintiff held out his hand expecting to get his medications. When plaintiff did not receive his Trilisate, he asked Peters for the rest of his medication. Peters told plaintiff that his Trilisate prescription had run out, i.e., it had expired. Plaintiff alleges that he asked Peters for a medical request form so that he could see a doctor to have his prescription refilled but Peters refused to give him one and told him that he had to have money in his prison account in order to get medical attention or medication.

2

According to jail medical records, plaintiff's Trilisate prescription expired on September 2, 2004, and plaintiff did not receive any further Trilisate during his stay at WCJ. From September 2 until he was transferred to DCI on September 23, 2004, plaintiff never submitted a medical request form requesting to see a physician so that he could renew his Trilisate prescription. Further, after his prescription of Trilisate expired on September 2, 2004, plaintiff did not file a grievance regarding his Trilisate prescription. Plaintiff continued to receive Amitriptyline on a daily basis up until his transfer to DCI on September 23, 2004.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy his initial burden simply by pointing out the absence of evidence. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support

3

each element of the cause of action, showing a genuine issue for trial.  Id. at 322-23.  Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).  In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents.  Woods v. City of Chi., 234 F.3d 979, 988 (7th Cir. 2000).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable."  Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).  In addition, a summary judgment motion cannot be disputed with hearsay statements, Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997), or with "conclusory allegations and self-serving documents, without support in the record," Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chi. Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998)).

The fact that all parties have moved for summary judgment, and thus all parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit.  See 10A Charles Alan Wright, et al., Federal Practice and Procedure, § 2720 at 327-28 (3d ed. 1988).  I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of

4

law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957).

## III. BOHLMAN'S MOTION FOR SUMMARY JUDGMENT

Until mid-July 2004, Bohlmann served as a doctor and as the medical director at WCJ, where he saw plaintiff on three occasions – on October 15, 2003, when plaintiff complained of neck pain; on December 6, 2003, when plaintiff complained of pain in his pubic area; and on February 15, 2004, when plaintiff complained of lingering pain in his pubic area. It is undisputed that none of plaintiff's encounters with Bohlmann relate to his live claim – that he was denied medical care due to a lack of funds. In fact, at the time that plaintiff alleges Peters denied him care, Bohlmann was no longer working as WCJ's medical director.

As such, it is clear that Bohlmann is entitled to summary judgment.

## IV. PETERS'S AND PLAINTIFF'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendant Peters contends that she is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies and because there is no evidence that she violated plaintiff's constitutional rights. Plaintiff asserts that it is clear that Peters violated his rights.

**A.    Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner complaining of prison conditions to exhaust available administrative remedies before filing an action under § 1983. 42 U.S.C. § 1997e(a). "[F]ailure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." Dale v. Lappin, 376 F.3d 652, 655

5

(7th Cir. 2004). If correctional officers refuse to provide inmates with grievance complaint forms when requested, an administrative remedy becomes "unavailable." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006); Dale, 376 F.3d at 656. In Kaba, the prisoner argued that administrative remedies were not available to him because he was denied grievance forms. 458 F.3d at 685. The prison officials argued that no reasonable fact finder could find that administrative remedies were not available to the plaintiff, because he filed grievances before the alleged incident took place and filed a lawsuit shortly after it took place. Id. The court held that a factual issue existed as to whether the prisoner plaintiff had exhausted his administrative remedies and stated that the "ability to take advantage of administrative grievances is not an "either-or" proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." Id. at 685.

It is undisputed that plaintiff has never filed a grievance regarding Peter's refusal to give him a medical request form or regarding his Trilisate prescription generally. However, there is a dispute as to whether administrative remedies were available to plaintiff. Plaintiff avers that he asked for a complaint form immediately after Peters refused to give him a medical request form and that Peters refused to give him the complaint form as well. (Gabino Aff. Opp'g Peters's Aff. ¶ 6.)[2] He further states that no one gave him a complaint

---

[2]Peters argues that plaintiff has not alleged that he was prevented from filing a complaint as the result of official misconduct. I disagree. Plaintiff's affidavit states that he asked Peters for a complaint and that she refused to give it to him – the same sort of misconduct alleged in Dale and Kaba.

6

form at any time between his interaction with Peters and his transfer to DCI. (Id.)[3] To meet her burden of showing that plaintiff failed to exhaust available administrative remedies, Peters has presented only the WCJ grievance form – essentially a lined piece of paper with instructions at the top to "[d]escribe your request/appeal/complaint" – and WCJ's written policy on how jail officials are to process complaints. (Peters's Ex. H; Peters's Ex. I.) Peters has not filed anything describing how and from whom plaintiff could have obtained a complaint form while at WCJ. Further, she has not filed anything that would permit me to find that, assuming plaintiff was unable to get a grievance form from her, plaintiff was aware that grievance forms were readily available from some other official at WCJ or that plaintiff could have effectively complained of Peters's conduct after his transfer to DCI.[4]

Just as the Seventh Circuit was, in deciding Kaba, I am:

left with a substantial number of open questions that cannot be resolved on the record before [me]: Could [plaintiff] have obtained the necessary forms to file a grievance against [Peters]? Could he have appealed to [a higher authority] without the appropriate form? . . . Would [WCJ] have permitted a tardy grievance after [plaintiff]'s transfer . . . ? . . . At what point did the prison officials' misconduct, if there was any, rise to the level so as to prevent a grievance from being filed?

458 F.3d at 686. And just as in that case, summary judgment on the basis of failure to exhaust administrative remedies is inappropriate at this point.

---

[3]It is undisputed that forms were available at least by December 2004, when plaintiff was at DCI, as plaintiff filed an unrelated inmate grievance at that time. However, it is not clear whether plaintiff could have used a DCI form to complain of Peters's conduct at this time.

[4]Indeed, Peters has not affirmatively stated that she did not refuse to give plaintiff a grievance form. Of course, such a statement, alone, would not resolve the factual dispute.

7

**B.     Eighth Amendment Claim**

To establish liability under the Eighth Amendment, plaintiff must show (1) that his medical need was objectively serious and (2) that, assuming plaintiff's version of the facts, Peters acted with deliberate indifference to his health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Peters asserts that no evidence on the record indicates that Trilisate treated a serious medical need or that Peters acted with deliberate indifference.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). Chronic and substantial pain suffices as a serious medical need. Gutierrez, 111 F.3d at 1373 (citations omitted). Judging the seriousness of pain is a particularly daunting task. James McGrath, Raising the "Civilized Minimum" of Pain Amelioration for Prisoners to Avoid Cruel and Unusual Punishment, 54 Rutgers L. Rev. 649, 667 (2002). The Seventh Circuit has approached this task by calling for a cost-benefits analysis – comparing the cost of the requested treatment with the benefits of pain management. Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999). In Ralston, the prisoner had a prescription for pain medication and claimed that, for no reason one day, a guard had refused to give him his prescribed medication. Id. at 1161. The Court of Appeals reversed the district court's finding that plaintiff's medical need was not adequately serious in part because the cost of dispensing plaintiff's already-prescribed medication to him was so low. Id. at 1162.

8

In his deposition, plaintiff stated that had been prescribed Trilisate for relief of muscle pain related to a hernia.[5] He stated that "it was helping me more during the day, like, to move around, standing. Like, it made a difference . . . like it was if you have a headache you take Tylenol, it makes you feel better in some ways." (Peters's Ex. A at 103.) This statement is difficult to interpret. On one hand, pain that makes it difficult "to move around" and "stand[]" may be severe. And plaintiff's serious underlying health problems had the ability to cause significant pain. (See Attach. to Pl.'s Aff. Opp'g Peter's Aff. (medical records referring to forthcoming surgery to correct plaintiff's hernia)); see also Arroyo v. City of New York, 99 Civ. 1458, 2003 U.S. Dist. LEXIS 16727 (S.D.N.Y. Sept. 30, 2003) (stating that surgery for a hernia was not necessary to treat a serious medical need, in part, because the prison treated pain associated with the hernia). On the other hand, plaintiffs' statement that Trilisate "makes you feel better in some ways" suggests less severe pain. Ultimately, I am unable to find that plaintiff's pain amounted to a serious medical need as a matter of law. However, there is evidence in the record that would permit an inference that plaintiff's pain amounted to a serious medical need.[6] This is particularly so given that plaintiff was not asking for special treatment, such as surgery or experimental medication. Rather, he was

---

[5] The record shows that he had also complained to prison medical staff of neck pain related to a car accident injury and it is unclear whether the Trilisate was alleviating only pain associated with the hernia or also neck pain.

[6] Peters has argued that Trilisate is a drug administered for mild to moderate pain, and suggests that this shows that plaintiff's pain did not amount to a serious medical need. However, this argument is based on a line in Peters's affidavit that simply states that Trilisate "is proscribed [sic] for pain . . . [and] is similar to aspirin." (Peters Ex. B at 3.)

In addition, Peters finds it noteworthy that plaintiff is not currently taking Trilisate. However, plaintiff has filed medical records showing that he took Trilisate from October 2004 – after his final transfer from WCJ to DCI – until he received surgery for his hernia and thus the underlying condition causing him pain was cured.

9

simply asked to be permitted to request a follow-up doctor's visit in order to have his prescription refilled. See Ralston, 167 F.3d at 1162 (discussing the cost-benefit analysis). Thus, I turn to whether the record shows that Peters was not deliberately indifferent to plaintiff's need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." Chapman, 241 F.3d at 845 (citing Farmer, 511 U.S. at 840-42).

Peters has submitted evidence that she did not deny any request for a form on the basis of plaintiff's ability to pay for medical care. (Peters Ex. B at 2 (stating in an affidavit that she has never denied an inmate medical care due to a lack of funds and that she has never asked an inmate about his available funds).) This differs from plaintiff's contention that he asked Peters for a medical request form to see a doctor about his Trisilate prescription and Peters asked if plaintiff had any money in his account. Plaintiff alleges that when he answered "no," Peters said, "'You cannot get any medical attention – no, you can't get any meds.'" (Peters Ex. A at 79.)

10

Case 2:05-cv-00417-LA   Filed 03/23/07   Page 10 of 13   Document 59

If Peters indeed refused plaintiff's request for a medical request form for an arbitrary or illegitimate reason – and the balance of plaintiff's prison account would clearly be such a reason – then a jury could reasonably conclude that she had shown deliberate indifference to plaintiff's need for pain relief. See MacDonald v. Maricopa County, No. CV 03-0374-PHX-SMM, 2006 U.S. Dist. LEXIS 70340, at *19-20 (D. Ariz. Sept. 27, 2006) (finding that where the plaintiff alleged that a prison official refused to give him a form with which to request medical attention for no reason, a genuine issue of material fact existed as to whether such official acted with deliberate indifference); O'Bryan v. Sedgwick County, No. 98-3308-JTM, 2000 U.S. Dist. LEXIS 9229, at *17-18 (D. Kan. June 12, 2000) (same); accord Gil v. Reed, 381 F.2d 649 (7th Cir. 2004) (finding that where the plaintiff alleged that a prison official one day refused to dispense a prisoner's prescribed antibiotic for no reason and acted angry, a genuine issue of material fact existed as to whether such official acted with deliberate indifference).

Peters argues that it is clear that she did not act with deliberate indifference for three reasons: (1) plaintiff had been instructed via the WCJ manual that inmates are to obtain medical request forms from guards, (2) plaintiff was entitled to medical care regardless of his ability to pay for it, and (3) Peters does not have the authority to prescribe medications. Frankly, it is not clear how these arguments bear on Peters's state of mind at the time she is alleged to have refused to give plaintiff a medical request form. I presume that Peters's first argument is intended to show that Peters had no duty to provide plaintiff with a medical request form. However, regardless of Peters's duties at the jail, it cannot be that she is entitled to erroneously inform an inmate that he has no right to medical care in the face of

11

a serious medical need.[7] Turning to Peters's second argument, I presume that it is intended to show that plaintiff, had he filled out a form, would have been granted medical care. However, this doesn't deal with the gateway to such care – the form itself. Finally, Peters's third argument is similarly unhelpful. Plaintiff does not allege that he asked Peters to write him a new prescription for Trilisate. Rather, he alleges that he asked her for a medical request form, so that he could talk with a doctor about refilling his prescription.

In conclusion, I will deny both plaintiff's and Peters's motions for summary judgment. Peters has failed to meet her burden of showing that plaintiff failed to exhaust administrative remedies that were available to him. Further, although I cannot find at this time that plaintiff's medical need was objectively serious as a matter of law, there is evidence in the record that would support an inference that it was sufficiently serious. Finally, this case presents a factual dispute as to whether Peters wrongfully refused to give plaintiff a medical request form and, if so, whether such act indicates that Peters acted with deliberate indifference to plaintiff's serious medical need.

## V. PLAINTIFF'S REMAINING MOTIONS

Plaintiff has brought two motions to appoint counsel, a motion to permit a witness to testify at plaintiff's trial and several motions to compel and motions in limine. I will deny each of these motions without prejudice. I will permit both of the remaining parties to file any new motions for summary judgment, along with supplemental evidence, within 60 days of this order. If I receive no motions within this period or if I receive a motion and ultimately deny

---

[7] Further, whether it was Peters's responsibility to give inmates a medical request form is unclear, as plaintiff stated in his deposition that when he asked a guard for a medical request form in the past, the guard referred him to the nurse. (Peters Ex. A at 64.)

it, then I will issue a scheduling order in preparation for trial and plaintiff may renew his motions.

## VI. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant Bohlman's motion for summary judgment (Docket #17) is **GRANTED**.

**IT IS FURTHER ORDERED** that Bohlmann is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that defendant Peters' motion for summary judgment (Docket #33) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket #39) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's remaining motions are **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties may file additional motions for summary judgment, if they so desire, within 60 days of this order.

Dated at Milwaukee, Wisconsin, this 23 day of March, 2007.

/s\
LYNN ADELMAN\
District Judge

13